# EXHIBIT D

Plaintiff's June 1, 2026 Discovery Deficiency Letter

**MARK ANTHONY ORTEGA**
PO Box 702099
San Antonio, TX 78270
mortega@utexas.edu
(210) 744-9663

June 1, 2026

**VIA EMAIL**
Timothy R. Allen
tallen@trismartsolar.com; timothyallenlaw@gmail.com
600 Northpark Central Drive, Suite 140
Houston, Texas 77073

**Re:** Discovery Deficiency Letter and Request to Confer - Defendant TriSMART Solar, LLC's Responses to Plaintiff's First Requests for Admission, First Requests for Production, and First Set of Interrogatories (served Dec. 8, 2025)

> *Ortega v. TriSMART Solar, LLC, et al.*, No. 5:25-CV-00865-JKP-HJB (W.D. Tex., San Antonio Div.)

Dear Mr. Allen:

This letter is sent pursuant to Federal Rule of Civil Procedure 37(a)(1) and the Local Rules of this Court to confer in good faith regarding deficiencies in TriSMART Solar, LLC's ("TriSMART") December 8, 2025 responses to my First Requests for Admission, First Requests for Production, and First Set of Interrogatories. I have set out the deficiencies below, request by request. I ask that TriSMART cure them by serving supplemental responses, verified interrogatory answers, and the documents identified below within fourteen (14) days, by June 15, 2026. If we cannot resolve these issues, I intend to move to compel under Rule 37(a).

I am available to confer by telephone. Please send me a few dates and times that work for you.

### I. Threshold and Recurring Deficiencies

Three defects recur throughout TriSMART's responses and apply regardless of the individual request.

**A. The interrogatory answers are not verified.** Rule 33(b)(5) requires that "[t]he person who makes the answers must sign them," and the answering party must verify its answers under oath. TriSMART's interrogatory responses are signed only by counsel and contain no verification or oath by any TriSMART representative. Unverified interrogatory answers are the equivalent of no answer at all. Please serve answers verified under oath by a TriSMART representative with knowledge.

**B.  The boilerplate objections are improper and preserve nothing.**  Nearly every response recites that a request is "overly broad, unduly burdensome, and not reasonably limited in scope" or "not proportional to the needs of the case," quoting the Rule 26(b)(1) factors verbatim. An objection that merely incants the proportionality factors, without explaining the burden or offering any supporting facts (volume of documents, hours, or cost), is no objection at all. Each such objection should be withdrawn or supported with specific facts.

**C. TriSMART has not stated whether it is withholding responsive material.**  Rule 34(b)(2)(C) requires that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Many production responses object and then say "subject to and without waiving the foregoing objection, see attached," without identifying what, if anything, is being withheld. The "subject to and without waiving" formulation is improper hedging. For each request, TriSMART must either produce the responsive documents or state specifically what is withheld and on what basis.

## II.  Interrogatories

**Interrogatory No. 1 (lead sources, Jan. 1–July 1, 2025).**  TriSMART objected and gave no answer. The interrogatory is limited to a six-month window and to Texas consumers and goes to the central issue in this case, the source of the lead(s) that produced the calls to my number. TriSMART has admitted that it "ha[s] a business relationship with one or more third-party companies that generate sales leads" (RFA No. 2) and that "a portion of [its] business model involves [its] sellers acquiring sales leads … from third-party lead generation companies or contractors" (RFA No. 7). Having admitted that it uses third-party lead generators, TriSMART cannot refuse to identify them. The boilerplate objection is meritless. Please identify each responsive person or entity.

**Interrogatory No. 2 (the lead for Plaintiff).**  TriSMART answered that it "has no record of receiving a sales lead regarding PLAINTIFF." That answer cannot be reconciled with TriSMART's own production: the CRM screenshot TriSMART produced for 210-744-9663 shows that I am an existing contact in its customer-management system, with a contact record, time zone, and a "First Attribution Source." Please explain how my contact information came to be in TriSMART's CRM if not through a lead, state the source reflected in the "attribution" and lead-source fields of that record, and state the date the record was created.

**Interrogatory No. 3 (relationship with Jose Turrubiates).**  TriSMART responded only "see produced contract." A reference to documents under Rule 33(d) is proper only where the answer may be ascertained from the documents and the burden of doing so is substantially the same for both parties. The interrogatory asks for the dates of the relationship and the nature of the services Mr. Turrubiates was authorized to provide. The contract does not state when the relationship began in practice, whether it remains in effect, or when it ended; TriSMART's own wire records show payments to Mr. Turrubiates from February 14, 2025 through September 12, 2025. Please state

narratively the start and end dates of the relationship, its current status, and the services Mr. Turrubiates was authorized to perform.

**Interrogatory No. 4 (relationship with "Smart Home Solar").**  TriSMART answered that it "has no record of a business relationship with 'SMART HOME SOLAR.'" Please confirm that this answer rests on a reasonable inquiry, including a search of the CRM lead-source and agent-note fields and of communications with Mr. Turrubiates, and withdraw the unsupported boilerplate objection.

**Interrogatory No. 5 (compensation structure for lead generators).**  TriSMART's answer, "no record of a business relationship with 'SMART HOME SOLAR'",  is non-responsive. The interrogatory does not ask about Smart Home Solar; it asks TriSMART to describe the compensation structure for the third-party lead generators it has admitted using (RFA Nos. 2, 7). An evasive or incomplete answer is treated as a failure to answer under Rule 37(a)(4). Please describe the compensation structure (per lead, per sale, commission, or otherwise).

**Interrogatory No. 6 (internal do-not-call policy).**  TriSMART described a CRM-based "Do Not Call" procedure. This confirms that TriSMART maintains do-not-call data in its CRM and underscores the relevance of Requests for Production Nos. 8 and 10. To the extent any part of this procedure is documented in writing, please confirm whether responsive written materials exist and produce them (see RFP No. 6).

**Interrogatory No. 7 (steps to ensure third-party compliance).**  TriSMART answered only that its "contract with Jose Turrub[i]ates requires him to follow federal and state marketing laws." That is not responsive to what steps TriSMART takes to ensure compliance and to maintain do-not-call lists, and it cannot be reconciled with TriSMART's denial of RFA No. 8, by which TriSMART represented that it does have "a written policy that requires all third-party lead generators to maintain and honor an internal do-not-call list." If that written policy exists, please describe it, identify it, and produce it (see RFP Nos. 4, 6). Please also describe any monitoring, auditing, or verification TriSMART performs.

**Interrogatory No. 8 (Plaintiff's do-not-call request).**  TriSMART's answer asserts that no do-not-call request was made to it. That does not address TriSMART's own record evidence: the CRM screenshot TriSMART produced shows that "Inbound DND has been activated for this contact" and that "DND [was] enabled by user for all channels" on July 16, 2025. Please state all facts concerning that July 16, 2025 DND activation, who activated it, when, why, and in response to what.

**Interrogatory No. 9 (facts supporting affirmative defenses).**  TriSMART objected and provided no facts, asserting prematurity. Contention interrogatories directed to affirmative defenses are proper, and a blanket refusal to state any supporting facts is not. TriSMART's operative Answer pleads fifteen affirmative defenses, several of which are fact-dependent,. including that I use my telephone "for business purposes" (First Defense), that TriSMART is exempt under the

"established retail location" exemption of Tex. Bus. & Com. Code § 302.059 (Ninth Defense), and that the alleged injuries were caused by third parties (Twelfth and Thirteenth Defenses). Please state the facts presently known that support each affirmative defense, identify the witnesses, and identify the documents, and supplement as discovery proceeds.

**Interrogatory No. 10 (agreements with Jose in 2025).**   TriSMART responded "see produced contract." Please confirm that the produced Independent Contractor Agreement is the only agreement , written or oral,  between TriSMART and Mr. Turrubiates in effect during 2025, or identify any others, including the Individual Incentive Plan Schedule / "Backsheet" and the Plan Acknowledgment that the Agreement itself references.

**Interrogatory No. 11 (persons with knowledge).**   TriSMART referred me to its Initial Disclosures. That is insufficient. Rule 26(a)(1)(A)(i) disclosures require only those individuals the disclosing party "may use to support its claims or defenses," whereas this interrogatory asks for every person with knowledge of relevant facts. At a minimum, that includes the individual sales agents who placed the outbound calls reflected in the call records, Mr. Turrubiates, and the TriSMART personnel responsible for the CRM and do-not-call functions. Please identify all such persons with the information requested.

**Interrogatory No. 12 (lead-verification process).**   TriSMART's answer, that it obtains leads "through potential customer submissions in response to web ads and the TriSMART website",  is non-responsive and, again, cannot be reconciled with its admissions that it uses third-party lead generators (RFA Nos. 2, 7). The interrogatory asks what TriSMART does to verify that a lead was obtained with the consumer's consent and in compliance with the TCPA before accepting or paying for it. Please describe that verification process.

**Interrogatory No. 14 (corporate structure).**   TriSMART answered only that Mr. Turrubiates and "Smart Home Solar" are not its parents, subsidiaries, or affiliates. That is not what the interrogatory asks. Please identify TriSMART's actual parent corporations, subsidiaries, and affiliates and describe the corporate relationships. This information is relevant to, among other things, the alter-ego and voidable-transfer allegations in the operative complaint and to identifying entities that may have received transferred assets.

**Interrogatory No. 15 (persons who prepared the answers).**   TriSMART objected on work-product grounds. The identities of the persons who provided the factual information underlying interrogatory answers are not attorney work product and are routinely discoverable; the interrogatory seeks no attorney's mental impressions. This deficiency is compounded by the absence of any verification (Section I.A above). Please identify the person(s) who provided the information for each answer and serve a verification.

### III.  Requests for Production

**RFP No. 1 (documents relied on in interrogatory answers).**  The objection is boilerplate, and "see attached" neither identifies what was produced nor states whether anything is withheld (Rule 34(b)(2)(C)). Please confirm the specific documents produced in response and whether any responsive documents are being withheld.

**RFP No. 2 (all communications to Plaintiff's number, including recordings).**  TriSMART produced only call logs for 210-744-9663 for April 1-November 30, 2025. This is deficient in several respects. First, the request expressly seeks audio recordings, voicemail recordings, and text-message (SMS/MMS) logs in addition to call detail records; TriSMART's telephone platform records calls, and its CRM reflects SMS capability, yet no recordings or text logs were produced. Second, TriSMART unilaterally narrowed the time period and did not state whether responsive materials from the rest of the requested period are being withheld. Third, the produced logs do not appear to capture the specific solicitation calls at issue. Please produce all responsive call recordings, voicemail recordings, and text-message logs, and state whether any responsive material is withheld and on what basis.

**RFP No. 4 (training to third-party lead generators).**  TriSMART asserted a boilerplate proportionality objection and then stated "none." Please withdraw the objection, confirm that "none" reflects the result of a reasonable search, and reconcile it with TriSMART's denial of RFA No. 8, representing that it has a written policy requiring lead generators to maintain do-not-call lists.

**RFP No. 5 (agreements with Jose).**  TriSMART produced "the contract." Please withdraw the boilerplate objection and produce all responsive documents, including any addenda, the Individual Incentive Plan Schedule / "Backsheet," and the Plan Acknowledgment referenced in the Agreement, or confirm that none exist.

**RFP No. 6 (TCPA / do-not-call policies and procedures).**  TriSMART asserted a boilerplate objection and then stated "none." This cannot be reconciled with (a) TriSMART's denial of RFA No. 4, representing that it does maintain an internal do-not-call list, (b) TriSMART's denial of RFA No. 8, representing that it has a written policy as to third-party lead generators, and (c) TriSMART's answer to Interrogatory No. 6, describing a CRM-based do-not-call procedure. If TriSMART maintains an internal do-not-call list and the policies it represented in its admissions, the documents reflecting them must be produced. Please produce the responsive materials or, if TriSMART maintains that no responsive documents exist, amend its responses to RFA Nos. 4 and 8 accordingly.

**RFP No. 7 (communications with Jose re Plaintiff / lawsuit / calls).**  TriSMART responded "None." Given the ongoing contractor relationship and payments to Mr. Turrubiates through September 2025, and that Mr. Turrubiates is a named defendant, the representation that there are no responsive communications is unlikely. Please confirm that a reasonable search was conducted

across all sources, including email, text messages, and any messaging within the CRM and the onboarding / DocuSign systems.

**RFP No. 8 (internal do-not-call list).**  TriSMART asserted objections and produced nothing, without stating whether responsive material is withheld. This is the central document on Count II. TriSMART's CRM screenshot shows do-not-call functionality, its answer to Interrogatory No. 6 describes a CRM "Do Not Call" designation, and its denial of RFA No. 4 represents that it maintains an internal do-not-call list. TriSMART must produce its internal do-not-call list, including the entry for my number, and documents showing how the list is maintained, updated, and made accessible. Please produce.

**RFP No. 9 (compensation to Jose).**  TriSMART produced a payment record but no commission statements and no 1099 forms, and asserted a third-party-privacy objection. The payment records of a co-defendant that bear directly on the agency relationship are discoverable; privacy concerns do not justify withholding. Please produce commission statements, payment summaries, and 1099 forms, and confirm whether anything is withheld on privacy grounds.

**RFP No. 10 (complete CRM export for Plaintiff).**  TriSMART produced a screenshot. A screenshot is not "a complete and unaltered export of all data fields and entries." The request seeks the full record, lead source, agent notes, call dispositions, timestamps, and communication logs, which a static screenshot does not capture. The lead-source field is critical to the central question of where my information originated. Please produce a complete export of all fields and entries for my contact record and telephone number.

**RFP No. 11 (monitoring / supervision / auditing of Jose).**  TriSMART pointed to "the contract and payment record," which reflect no monitoring, supervision, or auditing. Please produce documents responsive to this request, monitoring or audit records, performance reviews, quality-assurance materials, or communications reflecting supervision, or state that none exist after a reasonable search.

**RFP No. 12 (personnel / seller file for Jose).**  TriSMART produced only the contract and payment record. A personnel or seller file ordinarily includes more, the onboarding application, the background-check authorization, the W-9 and banking authorization, and any separation documents,  and TriSMART's own DocuSign certificate references "Updated Onboarding Documents." Please produce the complete file or specify what is withheld and on what basis.

**RFP No. 13 (all third-party lead-generation / affiliate agreements).**  TriSMART limited its response to the agreement with Mr. Turrubiates. The request seeks agreements with any third party engaged to generate sales, set appointments, or telemarket for TriSMART's benefit. Because TriSMART has admitted using third-party lead generators (RFA Nos. 2, 7), responsive agreements beyond Mr. Turrubiates's should exist. Please produce all responsive agreements or confirm, after a reasonable search, that the Turrubiates agreement is the only one.

**RFP No. 14 (documents supporting affirmative defenses).**  TriSMART refused to produce any documents, asserting the request would require "marshalling all evidence." A party must produce the documents on which it relies to support its affirmative defenses. Please produce the documents supporting each affirmative defense.

**RFP No. 15 (outbound call logs).**  TriSMART again limited production to calls to and from my number. I recognize that company-wide outbound call records implicate breadth and third-party privacy. As a compromise, please produce, for the relevant period, the outbound call detail records from the telephone numbers and/or dialing campaigns used to call my number, together with the call records associated with the agents who placed those calls. I am willing to discuss an appropriate limitation.

## IV.  Requests for Admission

**RFA No. 9**: Whether Mr. Turrubiates is authorized to act as a dealer, independent contractor, or sales representative to market, promote, or generate sales leads, is improperly answered. TriSMART objected that the request is "compound," but the request is phrased in the disjunctive and is answerable. TriSMART's own production, the signed Independent Contractor Agreement designating Mr. Turrubiates a sales representative for "TriSMART Direct Sales," whose services include soliciting customers,  and its answer to Interrogatory No. 13 confirm the relationship. Under Rule 36(a)(4), TriSMART must admit or deny, or set out in detail why it cannot truthfully do so; a "compound" objection does not excuse a response. Please amend to admit or deny. I reserve the right to move under Rule 36(a)(6) to determine the sufficiency of this answer.

## V.  Conclusion

Please serve verified interrogatory answers and supplement TriSMART's responses and production by **June 15, 2026**. I am glad to confer by telephone beforehand; please send me a few times that work. If the deficiencies are not resolved, I will move to compel.

Nothing in this letter waives any of my rights, and I reserve the right to raise additional deficiencies.

Sincerely,

*/s/ Mark Anthony Ortega*
Mark Anthony Ortega
Plaintiff, Pro Se